BOUTELL MFG. CO. v. HUNT MFG. CO.

(Circuit Court, W. D. New York. October 14, 1910.)

No. 345.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PARING MACHINE.
   The Tripp patent, No. 572,689, for improvements in apple paring and coring machines, while of narrow scope, was not anticipated and discloses invention; also *held* infringed.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PARING MACHINE.
   The Boutell patent, No. 693,778, for an improvement in apple paring machines, the purpose of which is to give to the cutting knife a variable rotary movement and a more rapid movement at the ends of the fruit, was not anticipated, is novel and useful, and discloses invention; also *held* infringed.

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PARING MACHINE.
   The Boutell patent, No. 892,394, for improvements in apple paring and coring machines, covers a combination of old elements with the addition of a pusher device, the operation of which is novel and useful, and which renders the combination patentable as involving invention; also *held* infringed.

In Equity. Suit by the Boutell Manufacturing Company against the Hunt Manufacturing Company. Decree for complainant.

Church & Rich and Frederick F. Church, for complainant.
Nathan Heard, for defendant.

HAZEL, District Judge. The defendant is charged herein with infringement of patent No. 572,689, granted December 8, 1896, to H. A. & W. Tripp, and patents Nos. 693,778, granted February 18, 1902, and 892,394, granted July 7, 1908, to William H. Boutell, which relate to improvements in apple paring and coring machines. The Tripp patent relates to the means for supporting the knife arm and removing it from the turntable. The earlier Boutell patent relates to giving the turntable a desired rotary movement during the reciprocation of the carriage on which it is mounted, and the later Boutell patent relates to devices for removing the fruit from the fork after paring and coring. In machines embodying the patents in controversy there is provided a stationary frame to which is affixed the operating mechanism, i. e., the movable carriage with the paring knife attached so arranged that its edge will come directly below the center of the fork upon which the apple is impaled. The fork is supported upon a projection connected to the turntable below the carriage; the turntable be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing arranged to oscillate or rotate on its axis in one direction and cooperating in its paring movements with the knife and knife carrier. The knife arm is provided with a sleeve which rests on a hook projection on the spindle carrying the turntable, while the knife arm rests in the sleeve and is firmly held in its bearings by a spring. There is also mounted on the carriage a coring spoon, which enters the blow end of the apple during the paring operation. After paring and coring, the carriage moves outwardly, while the apple on the coring spoon is pushed forward by a pusher device to contact with the stationary arm, which loosens it from the coring spoon and precipitates it into a receiving device. The various parts and elements relating to the turntable, the paring knife, and pusher device are correlated in such a way, in their rotary and reciprocating movements, as to enable cooperation with each other to pare the fruit, core it, to release it and discharge it into a suitable receptacle and means for removing the core from the fork after paring and coring of the fruit.

In the Tripp patent, claim 7 is in controversy. It reads:

"7. In a machine for paring, the combination of a main frame, a knife carriage, a swinging knife frame, a knife-holding stock fixed to a supporting bar, 31, loosely connected to the swinging frame, and a detachable spring to hold the stock engaged therewith, said spring maintaining said connection, and the stock and its supporting bar being together entirely removable 'from the machine by the detachment of the spring, substantially as described."

The claim is narrow, as will be shown by the disclaimer in the specification. It must be limited to the means claimed and described, including, however, such means as may be fairly and reasonably comprehended as coming within its scope, several patents are relied upon to establish anticipation, but it will be sufficient to examine the patent to Boutell, No. 405,825, which is the closest reference. In such patent the turntable, as in the patent in suit, has a slotted arm to which the head of the knife arm is pivoted at the top end, while at its lower end it has a bracket with a slotted opening, which opening, however, is inclosed but permits the knife arm to move therein. To remove the knife arm from the turntable a bolt or screw at the top end must first be removed. The patentee desired to provide for the quick removal and replacement of the knife and without discontinuing the operation of the machine for any length of time. He accomplished this object by connecting a coil spring at its lower end to the turntable and at its upper end to a notched projection on the knife stock. By this adjustment of the spring the knife stock is pressed toward the fork on the machine and against the apple and is held firmly in its pivotal position. The improvement has modestly progressed the art, as the prior machines and publications do not disclose a similar construction.

In the Parker patent, No. 16,993, of 1857, is shown a spring operated with a turntable; but it does not perform the principal function of the spring in suit. In the Parker patent the knife-holding block is held in position by a spring catch; whereas, in the Tripp device the knife stock and supporting bar connected together are detachable. The Boutell and Parker devices were cited and discussed by the examiner of patents when the Tripp application was filed, but the claim

in suit, as amended, was allowed. From the action of the examiner the presumption is warranted that the patent was not anticipated, and this presumption the defendant has not overcome. In defendant's machine the spring holds the knife arm in place as it swings with the turntable and causes the knife head to move the fruit impaled on the fork. When the spring is taken from the notched portion of the knife arm which is integral to the rod, the knife rod may be easily withdrawn in a downward direction through the bifurcated opening in the turntable and may readily be replaced. The defendant's spring arrangement is slightly different from that of complainant, but it performs the same function. In using a removable cotter pin to ostensibly assist in holding the knife arm at the top end of the turntable, the defendant does not in my estimation defeat the charge of infringement. Indeed, the use of the cotter pin is of such little importance that it was evidently added with the expectation that by its use infringement would be avoided.

The Boutell patent, No. 693,778: The object of the patentee was to construct a paring machine which in operation would impart to the cutting knife a variable rotary movement and a more rapid movement at the ends of the fruit than at the points intermediate where its contour is larger. Claims 4 to 10 and 21 to 25 inclusive, relate in detail to the turntable and the variable swinging movements of the knife in paring the fruit. The fourth is fairly typical of the claims involved and reads:

"4. In a paring machine, the combination with the main frame and the carriage reciprocating thereon, of the paring head rotatable on the carriage having the paring knife thereon and co-operating projections between the paring head and frame for causing the rotation of the paring head, at a variable speed during the reciprocation of the carriage, whereby a more rapid rotary movement is imparted to the paring head during the operation upon the ends of the fruit."

Claim 5 specifies the combination of the fourth, and in addition thereto includes the long and short teeth to co-operate with corresponding surfaces to cause a variable rotation of the speed of the knife head. While the claim in terms is broad, yet, when read with the specification, the object of the inventor is so clearly discernable that it may be construed to mean that the increased speed shall only be at the ends of the fruit. Claim 21 broadly describes the means for controlling the knife so as to give it a quicker movement in paring the ends of the fruit than at the intermediate points where the diameter is larger. Claims 24 and 25 specify curved projections with curved teeth adapted to enter the recess in the frame. The art to which the invention belongs is old, and the various elements of the combination are found in prior patents and structures, except the element to which this decision is more particularly directed.

The patent to Pratt, No. 14,775, dated April 29, 1856, shows a knife operated by an eccentric gear and which in its paring operation travels at variable speed. It has no turntable or carriage, however, and therefore it is of no weight in construing the patent under consideration. Later machines having a carriage or turntable and paring knife attached thereto are described and illustrated in the several patents to

Oaks, which are a close approach to the Tripp and Boutell type of machines, and to such prior-patents and to so-called Eureka and Bonanza machines particular reference must be had to acquaint the court with the prior state of the art. Other paring-machine patents may be passed over without calling for special consideration. The desideratum of the patentees was to give an old element, the turntable supporting the knife head, not merely a variable speed, but a quicker speed at the ends of the fruit and slower at points of increased diameter. The Oaks patents and the Eureka and Bonanza machines, which embody such patents, operate on a different principle from the patent in suit. In such machines the speed of the knife head is shown to have operated slower at the ends of the fruit than at the bilge or larger parts. Such variableness of the speed, the evidence shows, was unsatisfactory and objectionable, as the paring head usually remained in contact with the pared fruit and did not pare the ends, making it necessary to repare it. In this situation the patentee improved the machine by securing the rotation of the turntable in co-operation with the knife arm in a different way than is shown in prior publications. To attain a more rapid movement of the knife at the beginning and end of the paring operation, he provided projections on the turntable to join others and one long projection to enter a suitable recess on the main frame. The specification describing his method of securing a variable speed of the knife says:

"Then the tooth, 41, engaging the projection, 43, will turn the head quite rapidly until the elongated tooth, 39, enters the recess, 40. As the engaging line of the tooth, 39, and the sides of the recess, 40, are farther removed from the center of rotation, the rotary movement of the head will be slower until the tooth, 39, is operated upon by the inner side, 40x, of the recess, 40, which is nearer the center of rotation, and the head is caused to rotate more rapidly again until the side of the tooth, 39, co-operates with the surface, 30, on the main frame, and the paring knife moves parallel with the fork and away from the fruit."

Such method of securing a variable rotary speed, quicker at the ends of the fruit than at the center, was new and accomplished a useful result. In the Eureka and Bonanza machines the turntable is turned by a rack bar on the frame and tooth section on the turntable. Regarding the operation of such machines, the expert witness for complainant testified:

"The first tooth or rack bar tooth engaging surface of each of the sectors is somewhat longer than the intermediate tooth or teeth of the sector, and as the motion of the turntable on its axis is imparted by the engagement of the sector teeth was a fixed rack bar, such engagement being caused by the movement of the sector axis in unison with the carriage, it necessarily follows that the rotary movement imparted in the turntable and knife with relation to the carriage is slower at the beginning and ending of the movement than at intermediate points in the movement. This means that the knife feed due to such movement is slower when paring the ends of the apples than where paring the center or bilge of the apple."

Giving weight to this testimony, it is obvious that the several Oaks patents are not anticipatory of the patent under consideration, nor do they afford a sufficient reason to give the claims the strictest possible construction.

In the defendant's Pacific machine is shown a main frame with a reciprocating carriage and turntable mounted on vertically extended bearings to enable rotation over the fork shaft. At the top of the turntable are two curved teeth which join and co-operate with teeth on the main frame. On the lower and rear end of the turntable is an upwardly projecting roller adapted to fit a recess in the main frame. By this arrangement the turntable swings during the intermediate movement and as the carriage moves toward the forked shaft. It makes no difference that the short teeth are located at the upper and not at the lower end of the turntable, as in complainant's device, or that the roller is located at its lower side. The patentee does not specify the particular location of the short teeth or long projection in his turntable or frame, and to merely change their location on the turntable without the achievement of a different result does not avoid infringement. Brammer v. Schroeder, 106 Fed. 918, 46 C. C. A. 41. By exhibit diagrams containing radial lines, defendant endeavored to show that, as the carriage of its machine travels at a certain speed, the turntable is given a rotating movement at the same speed and without increasing its speed at the ends of the fruit. Upon this point the testimony of the expert witnesses is contradictory and difficult to reconcile. In operation defendant's exhibit machine apparently indicates that the resultant of the use of the roller at the lower end of the turntable is a slower speed when the bilge of the fruit is pared and faster at the ends thereof. Giving weight to this impression leads to the conclusion that the arrangement, size, and configuration of the defendant's projections and roller in connection with the recess in the main frame imparted to the turntable a faster movement at the ends than at the middle of the fruit and were the equivalents of complainant's projections on the turntable and recess.

The second Boutell patent relates more particularly to a power machine having a plurality of forks mounted on the rotary fork reel and which are assembled to co-operate in relation to the turntable and knife. After paring an apple on the fork nearest the knife, the reel rapidly turns, bringing into paring position the apple on the next successive fork. The patent describes as an element of the combination a pusher device located on the main frame just outside of the fork shaft. The coring knife is arranged to recede while the pusher slides forward longitudinally of the fork, coming in contact with the fruit impaled thereon, pushing or discharging it onto the fruit receiver or coring knife. From the coring knife the fruit is pushed by a doffer arm into a suitable receptacle, while the pusher in its returning movements co-operates with the carriage and rapidly resumes its normal position. It is proven that prior to the adoption of the pusher device under consideration the fruit after having been pared frequently fell directly into the path of the knife and unless removed came in contact therewith in its reciprocatory or rotary movements, sometimes breaking the knife, and at other times despoiling the fruit. The object of the patentee was to overcome such objection and also to secure the advantage of rapid paring. The claims in controversy

are the eighth to the twelfth inclusive. The eighth claim reads as follows:

"8. In a paring machine, the combination with a rotary fork shaft, a paring knife movable longitudinally of the shaft at one side thereof, and a fruit receiver arranged substantially in line with the fork and adapted to tilt in a vertical plane, of a pusher operating on the main frame separate from and in rear of the fork to force the fruit from the latter onto the receiver after the completion of the paring operation and a doffer for stripping it from the receiver by the tilting of the latter."

All the elements are concededly old save that relating to "a pusher operating on the main frame separate from and in the rear of the fork."

The ninth claim, in addition to the combination of elements contained in the eighth, refers to the reel carrying a plurality of forks together with a stationary cam for operating the core doffers. Claim 10 describes the pusher operating outwardly past the fork during the same time that the receiver or coring spoon travels away from the fork. Claim 11 relates to a reciprocatory pusher with means for operating it to force the fruit from the fork. Claim 12 states a combination of elements and specifically states their relation with each other.

The defendant claims that, in view of the many prior pusher devices known to the art, the inclusion of such element in the combination did not rise to the dignity of invention. The various elements of the claims, it is true, were old and used in the structures of the prior art. The evidence shows that devices for slicing or pushing fruit from the fork after paring were used in the several patents to which the attention of the court is directed by counsel for defendant in his brief, but in the present combination the essential element of the claims, viz., a pusher device operating on the main frame separate from and in the rear of the fork to force the fruit from the latter toward the receiver after the completion of the paring operation, in my opinion, was new and novel. Such an arrangement of old elements was unknown to the prior fruit paring art, as may readily be seen by an examination of a few of the prior patents upon which the defendant lays stress. For instance, in each of the Oaks patents, Nos. 379,324, and 397,871, there is shown a slicing knife which, it is true, serves to hold the sliced fruit on the coring spoon; but, as the knife passes through the apple during the paring operation and does not operate to push it from the fork towards the receiver, it manifestly is not the equivalent of the pusher device in suit. In the Williams patent, No. 284,935, are shown means for removing the cored apple; but as there is no co-relation of coacting parts, as in complainant's device, it is not entitled to serious consideration. The Rice patent, No. 243,725, describes a slicing pusher device on the main frame which at the top of the vertical projection apparently moves to encircle the fork and coring spoon as the pusher moves forward; the coring knife, however, is operated by separate treadle, and there is no co-operation of the different parts as called for in the claims. The Boutell patent, No. 405,825, is somewhat similar to the Oaks patents, having a slicing knife already mentioned. It is probably true that, in view of the disclosure in the prior patents, the sepa-

rate elements of the combinations in suit, the second Boutell patent is perhaps not entitled to a very broad construction. The patentee concededly invented none of the separate elements. His invention consisted of the combination of old elements, and, as the combination was new and produced a useful result, the patent may safely be held valid. The law is well settled that to assemble or join elements commonly known and used in an art in such a way as to bring about their co-operation to produce a new result, one that is beneficial to users of the combination, the accomplishment is that of an inventor, and his patent is entitled to protection. Hailes v. Van Wormer, 87 U. S. 353, 22 L. Ed. 241.

In the defendant's Pacific machine, the various elements of the combination are associated together and operated to pare the fruit and push it from the fork onto the coring spoon before the paring knife travels back to its normal position. Alterations, it is true, have been made by the defendant by which the reciprocation of the pusher is brought about by a stud arrangement in a rotary cam; but this change of form is immaterial and will not avoid infringement. Unquestionably the principle of complainant's patent is present, and by equivalent means a similar result is attained. The defendant must therefore be held to have appropriated the claims which specifically describe the structure and the different elements which are assembled and combined to co-operate so as to produce the result. The invention is perhaps not of great importance and may not fill a long-felt want, yet it has merit and has removed the objection arising from the frequent dropping of the fruit after paring into the paring path, and also helps to rapidly discharge the pared fruit into a suitable receptacle. The patent must be protected from wrongful infringement, for this is the only way of affording inventors benefiting and effectual encouragement.

A decree, with costs, may be entered for complainant for injunction and accounting on claim 7 of patent 572,689, of December 8, 1896, to Henry A. and Walter Tripp, and claims 4 to 10 and 21 to 25, inclusive, of patent No. 693,778, of February 18, 1902, and claims 8 to 12, inclusive, of patent No. 892,394, of July 7, 1908, to William H. Boutell.